IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION, an Alaskan corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>YVETTE ROUBIDEAUX, DIRECTOR, U.S. INDIAN HEALTH SERVICE,<br><br>        Defendant. | Case No. 3:13-cv-00164-SLG |

## ORDER DENYING MOTION FOR IMMEDIATE INJUNCTIVE RELIEF

Before the Court at Docket 3 is a motion filed by Plaintiff Southcentral Foundation (SCF). Although entitled a motion for a preliminary injunction, SCF is seeking mandamus relief in the form of an order that requires the immediate payment to it from a federal official of additional funding for Fiscal Year (FY) 2012 for the Methamphetamine and Suicide Prevention Initiative (MSPI) and the Domestic Violence Prevention Initiative (DVPI). The Defendant is Yvette Roubideaux, the Director of the Indian Health Service ("IHS" or "Defendant"). After this litigation was filed, IHS agreed to pay SCF approximately $1.08 million of the disputed funds. Still disputed is approximately $449,000 in funding. On September 27, 2013, the Court heard oral argument on the motion. Having considered the documents filed with the Court, the law, and the arguments of counsel, the Court will deny the motion for the reasons set forth herein.

## FACTUAL BACKGROUND

A central issue in this action is whether the Indian Self-Determination Act (ISDA) applies to the funding of MSPI and DVPI. Under Title V of the ISDA, the Secretary of the Interior enters into contracts with willing tribes, pursuant to which those tribes provide programs or services that otherwise would have been provided by the federal government.[1] The ISDA requires that the government provide contracting tribes with an amount of funds equivalent to those that the government would have incurred had it provided the programs or services, as well as the "full amount" of "contract support costs" incurred by the tribes in performing the contracts.[2] Plaintiff SCF is a tribal organization that is authorized to enter into ISDA contracts with IHS.[3]

In FY 2008, Congress appropriated funds for IHS to allocate to address problems involving methamphetamine use and suicide among Native Americans.[4] Specifically, in Public Law 110-161, Congress appropriated these funds as follows:

> That $14,000,000 is provided for a methamphetamine and suicide prevention and treatment initiative [MSPI] . . . . Provided further, That notwithstanding any other provision of law, these funds shall be allocated outside all other distribution methods and formulas at the discretion of the Director of the Indian Health Service and shall remain available until expended [.][5]

---

[1] 25 U.S.C. § 450 et seq.

[2] 25 U.S.C. § 450j-1(a)(1)–(6); *Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181, 2186 (2012).

[3] *See* Docket 5 at 4 (SCF Memorandum); Docket 6 ¶ 5 (8/21/13 Decl. of Lee Olson).

[4] Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007).

[5] *Id.*

In the related House Report, the appropriations committee explained: "The Committee expects the Directors of [IHS] and the Bureau of Indian Affairs to distribute this funding outside of the normal formulas and methodologies to target the areas with the highest needs in Indian Country."[6]

In FY 2009, Congress again appropriated funds for MSPI, and added funds for the Domestic Violence Prevention Initiative (DVPI). The appropriation used slightly different language from the prior year:

> That $16,391,000 is provided for the [MSPI] and $7,500,000 is provided for the [DVPI] and, notwithstanding any other provision of law, the amounts available under this proviso shall be allocated at the discretion of the Director of the Indian Health Service and shall remain available until expended[.][7]

Appropriations by Congress in later FYs contain similar language.[8]

On April 28, 2009, IHS circulated "Area Guidance for Distribution of [FY] 2008 and [FY] 2009" MSPI funds.[9] The correspondence included proposed sample language to allocate the funds using amendments to the ISDA contracts. IHS indicated that it

---

[6] Dep't of the Interior, Env't, and Related Agencies Appropriations Bill, 2008, H.R. Rep. No. 110-187 (2007).

[7] Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 735 (2009).

[8] *See* Interior Dep't and Further Continuing Appropriations, Fiscal Year 2010, Pub. L. No. 111-88, 123 Stat. 2904, 2946 (2010) (over $16 million for MSPI and $10 million for DVPI to "be allocated at the discretion of the Director of the [IHS]"); Consol. Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786 (2012) (remaining funds for MSPI and DVPI to "be allocated at the discretion of the Director of [IHS.]").

[9] Docket 17-3 at 1 (4/28/09 Letter from DHHS to Area Directors re: MSPI).

adopted this approach at the request of the tribes, instead of a competitive grant process.[10]

The proposed amendment stated, in part:

The Director of the IHS has decided to fund one-time, non-recurring demonstration projects intended to expand community-level access to effective Tribal methamphetamine and suicide prevention and treatment programming. The Director of the IHS solicited proposals from Tribes and as a consequence of that solicitation, has elected to fund the [Tribe]'s proposal.

* * *

However, notwithstanding any provision of the [Tribe]'s compact or contract and [Funding Agreement] . . ., the following terms and conditions shall apply to the use of these funds. By signing this Amendment, both parties agree:

1. The MSPI funds in the [Funding Agreement] are part of a non-recurring, one-time allocation, and the Tribe acknowledges that:

    a. No contract support cost (CSC) funding is associated with the MSPI funds, and nothing in the [Funding Agreement] creates a promise on the part of the IHS to pay the [Tribe] CSC funding in connection with the MSPI funds.

    b. The Tribe still wishes to contract for the MSPI funds and can conduct the MSPI-funded project or activity, despite the absence of CSC funding.

    c. The IHS will include the CSC need associated with the MSPI funds in the annual CSC Shortfall Report to Congress.[11]

SCF highlights that (a) and (c) seem inconsistent.[12] Nevertheless, the parties adopted amendments to the FY 2009 and FY 2010 Funding Agreements concerning MSPI and

---

[10] Docket 17-3 (4/28/09 Letter from DHHS to Area Directors re: MSPI); Docket 5-1 at 4 (6/2/09 Letter from Tribes to IHS) (the tribes "particularly appreciate the agency approving the use of amendments to our existing contracts and funding agreements rather than requiring competitive grant proposals for our projects"); Docket 17-5 at 6 (5/3/10 DHHS Indian Health Service Report to Congress).

[11] Docket 17-3 at 11 (4/28/09 Letter from DHHS to Area Directors re: MSPI).

the FY 2010 Funding Agreement concerning DVPI that appear to have included, almost word-for-word, the above clauses concerning CSCs, either directly or by incorporating the language of an earlier amendment.[13]

SCF was required to submit scopes of work and budgets for the initiatives. IHS asserts that the budgets submitted were intended to be inclusive of the full costs of performance of carrying out the proposed programming.[14] However, SCF Vice President of Finance and Chief Financial Officer, Lee Olson, asserts that he was told by IHS during the first year of MSPI funding that SCF could not include indirect support costs in its MSPI budget.[15] SCF followed that directive with its MSPI budgets each year. But SCF included the full cost of fringe benefits in its MSPI budget requests, which are considered direct CSCs.[16] SCF included both indirect and direct CSCs in its budget requests for the DVPI, indicating that IHS never instructed SCF that it could not do so.[17]

---

[12] Docket 5 at 7–8, 22–23 (SCF Memorandum); Docket 6 ¶ 25 (8/21/13 Decl. of Lee Olson).

[13] *See, e.g.,* Docket 5-1 at 8-9 (Am. No. 11 to FY 2009 Funding Agreement for MSPI); Docket 5-1 at 13 (Am. No. 10 to FY 2010 Funding Agreement for MSPI); Docket 5-1 at 14-15 (Am. No. 14 to FY 2010 Funding Agreement for DVPI).

[14] Docket 17 at 9 (IHS Opposition); Docket 18 ¶¶ 8, 10 (9/13/13 Decl. of Beverly Cotton); Docket 21 ¶¶ 6, 7 (9/13/13 Decl. of Rose Weakhee).

[15] Docket 28 ¶¶ 3–5, 12 (9/20/13 Supp. Decl. of Lee Olson).

[16] Docket 28 ¶¶ 3–5, 12 (9/20/13 Supp. Decl. of Lee Olson).

[17] Docket 28 ¶ 6 (9/20/13 Supp. Decl. of Lee Olson).

In the FY 2011 MSPI/DVPI agreements, the language addressing CSCs was changed at the request of tribes and tribal organizations.[18] The FY 2011 agreements stated that CSCs "will be calculated and paid in accordance with" ISDA, and that "the parties agree that under this Amendment [SCF] will receive direct CSC in the amount of $0 and indirect CSC in the amount of $0."[19] IHS asserts that it agreed to these terms because negotiations were often stalled or delayed as a result of disputes over CSC language.[20] Despite this language, SCF's budget requests for FY 2011 included CSCs in the same manner as previous years (direct CSCs only in the MSPI budget, and both direct and indirect CSCs in the DVPI budget).[21]

IHS considered the amounts that were awarded to SCF each year to be full-cost recovery awards, and it appears that SCF did not receive any additional CSCs for these initiatives through FY 2011.[22]

For FY 2012, IHS and SCF unsuccessfully negotiated the language about CSCs for several months.[23] The negotiations are summarized, from IHS's perspective, in an

---

[18] Docket 20 ¶ 9 (9/13/13 Decl. of Robert McSwain); Docket 5-2 at 2 (Am. No. 10 to FY 2011 Funding Agreement for DVPI).

[19] See, e.g., Docket 5-2 at 2.

[20] Docket 17 (IHS Opposition); Docket 20 ¶ 9 (9/13/13 Decl. of Robert McSwain).

[21] Docket 28 ¶¶ 5, 7 (9/23/13 Supp. Decl. of Lee Olson).

[22] Docket 21 ¶¶ 6, 7 (9/13/13 Decl. of Rose Weahkee).

[23] Docket 5 at 6 (SCF Memorandum); Docket 5-2 at 15 (8/21/12 Email from IHS); Docket 5-3 at 8 (Emails dated 12/19/12 through 1/9/13 between SCF and IHS); Docket 5-3 at 17 (1/10/13 Email SCF counsel to IHS); Docket 5-3 at 19 (4/12/13 Letter IHS to Alaska Native Health Board); Docket 5-5 at 9 (6/25/13 Letter SCF to IHS); Docket 5-6 at 1 (8/7/13 Letter IHS to SCF).

August 7, 2013 letter from IHS to SCF.[24]  Certain correspondence is particularly relevant:

- By letter dated August 2, 2012, SCF provided to IHS a proposed budget for September 1, 2012, through August 31, 2013.[25]  SCF's funding request for MSPI totaled $599,596, and like prior years, included direct CSCs of $133,826 in fringe benefits but no indirect CSCs.  SCF's proposed budget for the DVPI program for that fiscal year totaled $482,554; like prior years, that proposed budget included both fringe benefits and indirect costs.[26]

- By letter dated September 7, 2012, SCF and the Alaska Tribal Health Compact (ATHC) wrote to IHS requesting language reflecting that MSPI and DVPI CSCs would be paid in accordance with ISDA.[27]

- By letter dated April 12, 2013, IHS indicated it was open to negotiating an amount for indirect CSCs for both initiatives, but would not agree to include any amounts for direct CSCs, reasoning "that to award direct CSC would be duplicative of what the IHS had already decided to pay for fringe benefits in the MSPI/DVPI award itself."[28]

- By letter dated April 23, 2013, SCF transmitted revised budgets for the initiatives to IHS that sought substantially greater funding.  For example, the MSPI revised budget removed all CSCs from the original $599,596 requested, and instead sought an additional $271,702 in CSC in addition to the $599,596.[29]

- By letter dated June 25, 2013, SCF submitted a "Final Offer[]" to IHS for each of the initiatives. SCF proposed that it receive a total of $271,702 for CSCs for the MSPI initiative, and a total of $177,733 for CSCs for the DVPI initiative, in addition to the base funding amounts that it had initially requested.[30]

---

[24]  Docket 5-6.

[25]  Docket 17-8 at 18 (8/2/12 Letter SCF to IHS).

[26]  Docket 17-9 at 21 (SCF FWWI IHS DVPI FY 2013 Proposal).  Although denominated for FY 2013, the DVPI proposal covers the period from August 2012 through July 2013.

[27]  Docket 17-10 (9/7/12 Letter Alaska Tribal Health Compact to IHS).

[28] Docket 5-6 at 4.

[29] Docket 28-1 at 1–2 (4/23/13 Letter SCF to IHS).

[30]  Docket 5-5 at 9–10 (6/25/13 Letter SCF to IHS).

- By letter dated August 7, 2013, IHS responded to SCF's June 25, 2013 letter. IHS rejected SCF's proposals. It refuted that SCF's letter qualified as a final offer under the ISDA and disagreed with the letter's content. IHS declined to incorporate the requested CSC language for multiple reasons, but primarily because of its view that the MSPI and DVPI initiatives are not programs subject to the ISDA and its distribution methods,[31] and because the proposed budgets already included "fringe benefits," which would make the requested award of direct CSCs duplicative.[32] IHS further asserted that even if CSCs were applicable to the MSPI and DVPI amendments, IHS "cannot verify that [the indirect costs sought] meet the definition of CSC," or that the requested amounts are proper because the parties did not negotiate on the rates.[33]

SCF brought this action against IHS on August 21, 2013, and filed a motion seeking preliminary injunctive relief.[34] In the course of the briefing on the motion, it became clear that SCF sought mandamus relief; SCF confirmed this at the September 27, 2013 oral argument. In the motion and supporting papers, SCF seeks an order that directs IHS to immediately:

(1) enter into contract amendments awarding SCF the agreed-upon amounts of $599,596 for MSPI and $482,554 for DVPI;

(2) enter into contract amendments specifying SCF's right to $223,493 and $134,999 for indirect CSCs associated with the MSPI and DVPI initiatives, respectively;

(3) enter into contract amendments specifying SCF's right to $48,209 and $42,734 for direct CSCs associated with the MSPI and DVPI initiatives, respectively.[35]

---

[31] Docket 5-6 at 8–11 (8/7/13 Letter IHS to SCF).

[32] Docket 5-3 at 19 (4/12/13 Letter from IHS, explaining that CSC for MSPI and DVPI must be $0, because these programs are "non-recurring" and identifying an amount would be "problematic . . . since direct CSC is considered recurring"); Docket 5-6 at 4, 11–13 (8/7/13 Letter IHS to SCF); Docket 19 ¶¶ 5–7 (9/13/13 Decl. of Max Tahsuda).

[33] Docket 5-6 at 11–14 (8/7/13 Letter IHS to SCF).

[34] Docket 1 (Complaint); Docket 3 (Motion); Docket 5 (SCF Memorandum).

[35] Dockets 1, 3, 5.

On September 10, 2013, while this motion was pending, IHS authorized funding to SCF in the amounts of $599,596 for MSPI and $482,554 for DVPI.[36] But the funding amendments specifically provide that the parties may continue to litigate the direct and indirect CSC issues.[37]

## DISCUSSION

### I. Jurisdiction

The parties agree that the Court has jurisdiction to hear this case pursuant to 25 U.S.C. § 450m-1 and 28 U.S.C. § 1331.[38]

### II. Analysis.

In the briefing, the parties dispute which standard for relief the Court should apply to decide this motion for immediate injunctive relief. SCF cites to 25 U.S.C. § 450m-1(a), which states:

> In an action brought under this paragraph, *the district courts may order appropriate relief including* money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this subchapter or regulations promulgated thereunder, or *mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f (a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).*

SCF emphasizes the highlighted language.[39]

---

[36] Docket 17 at 2 (IHS Opposition); Docket 17-1 at 3 (Am. No. 15 to FY 2012 Funding Agreement for MSPI); Docket 17-2 at 3 (Am. No. 14 to FY 2012 Funding Agreement for DVPI).

[37] Docket 17 at 2; Docket 17-1 at 4–5; Docket 17-2 at 4–5.

[38] The Court notes that while IHS indicates that this Court has jurisdiction under Section 450m-1 of ISDA, it also argues that ISDA provisions are not applicable to these initiatives. *See* Docket 17 at 17, 30. Because the Court applies a mandamus standard, it need not address this apparent inconsistency at this time.

SCF argues that, through Section 450m-1, Congress created a special statutory injunction standard that replaces the standard four-part test for consideration of a request for injunctive relief.[40] Under this special standard, SCF maintains that it need only demonstrate a likelihood of success on the merits or "reasonable cause" to believe that a violation of ISDA has occurred.[41] SCF cites to Supreme Court and Ninth Circuit precedent that has held that Congress "has the power to alter the traditional equitable balancing test" for obtaining injunctive relief, and that Congress may, by statute, "require federal courts to automatically enjoin actual or imminent violations of a statute without an individualized balancing of the equities."[42]

---

[39] Docket 5 at 13 (SCF Memorandum).

[40] Under that test, a plaintiff seeking a preliminary injunction "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). Under the sliding scale approach in the Ninth Circuit, a preliminary injunction may also issue where the plaintiff shows only that serious questions going to the merits were raised if the balance of hardship tips sharply in the plaintiff's favor, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1135 (9th Cir. 2011).

[41] Docket 5 at 13 (SCF Memorandum); Docket 27 at 14 (SCF Reply). *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d 1108, 1109 (9th Cir. 2004). Under a "reasonable cause" standard, a plaintiff need only show that there is "'reasonable cause' to believe that [the] defendant[ ] violated" a statute." *Id.*

[42] *See Owner-Operator.*, 367 F.3d at 1111 (Ninth Circuit held that although statute says that "a party injured due to a violation of the Truth-in-Leasing regulations 'may bring a civil action for injunctive relief,'" that did not eliminate court's equitable discretion); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) (concluding that court retained discretion under Clean Water Act, in part, because other forms of relief available and because statute did not intend to curtail court's discretion to grant equitable relief); *Tenn. Valley Authority (TVA) v. Hill*, 437 U.S. 153 (1978) (Endangered Species Act eliminated court's equitable discretion because "[i]ts very words affirmatively command all federal agencies 'to insure that actions authorized, funded, or carried out by them do not jeopardize the continued existence' of an endangered species or "result in the destruction or modification of habitat of such species . . . ."); *Trailer Train Co. v.*

IHS, on the other hand, disputes the applicability of Section 450m-1 to this litigation because it maintains the ISDA does not apply to these funding initiatives.[43] IHS also asserts that even if Section 450m-1 applies, it does not compel a court to order injunctive relief as a means of enforcing the ISDA. IHS asserts, instead, that the Court should apply the well-known, equitable, four-part test for issuing injunctive relief,[44] and notes that SCF requests a mandatory injunction, which is subject to heightened scrutiny.[45]

But at this juncture, this Court need not resolve the applicability of the ISDA to these funding initiatives. For at the September 27, 2013 hearing, SCF acknowledged that it is seeking mandamus relief in its motion, and specifically an order that compels the director of IHS to immediately issue additional funding to SCF.[46]

A court may grant the "extraordinary remedy" of mandamus to compel an officer of the United States to perform a duty to a plaintiff only when: "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from

---

*State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983) (standard requirements for equitable relief need not be satisfied for injunction under 49 U.S.C. § 11503, which permitted injunction "to prevent, restrain or terminate" violations of statute concerning taxing railroad property).

[43] Docket 17 at 2 (IHS Opposition).

[44] *Id.*

[45] *Id.* at 19–20 (citing cases).

[46] The Court notes that the mandamus standard would likely apply even if SCF had argued that it seeks injunctive relief because, "[w]hen the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard." *Or. Natural Res. Council v. Harrell*, 52 F.3d 1499 (9th Cir. 1995) (citing *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order Denying Motion for Immediate Injunctive Relief
Page 11 of 15

doubt'; and (3) no other adequate remedy is available."[47] The Ninth Circuit has expressed that, even where these three elements are satisfied, the remedy of mandamus lies within the trial court's discretion.[48] For the following reasons, this Court declines to award SCF the immediate mandamus relief it is seeking.

### A. SCF's Claim is Not Clear and Certain.

As an initial matter, the parties dispute whether ISDA governs the MSPI and DVPI initiatives.[49] Each party has presented compelling arguments as to why ISDA may or may not apply. On one hand, the initial allocation appropriation specifically stated that MSPI funds should be distributed "outside all other distribution methods" (and ISDA is arguably an "other distribution method[]") and at the "discretion" of the Director of IHS,[50] and IHS's April 28, 2009 "Area Guidance for Distribution of [FY] 2008 and [FY] 2009" MSPI funds reflected an intent that these funding initiatives should function outside of ISDA.[51] On the other hand, ISDA generally regulates funding agreements with tribes,[52] and "should be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."[53] Moreover, SCF's FY 2011 amendments stated that CSCs

---

[47] *Or Natural Res. Council v. Harrell*, 52 F.3d at 1508 (citing *Fallini*, 783 F.2d at 1345).

[48] *Id.*

[49] Docket 27 at 1 (SCF Reply).

[50] Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007); Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 735 (2009).

[51] Docket 17-3 (4/28/09 Letter from DHHS to Area Directors re: MSPI).

[52] *See, e.g.,* 25 U.S.C. § 458aaa-4.

[53] *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444–45 (D.C.Cir. 1988(quoting *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985)).

would be paid in accordance with ISDA.[54]  However, the Court need not determine, at this point, whether ISDA governs the amendments because, even if it does, SCF has not demonstrated that the amount of money it seeks in CSCs is clear and certain.

On the record before the Court, it is unclear how much money IHS would owe to SCF for CSCs, if CSCs were due.  IHS asserts that direct CSCs were already incorporated into both budgets for the FY in dispute, and indirect costs into the DVPI budget, such that an award of all of the CSCs now sought by SCF could be duplicative.[55]  Indeed, Mr. Olson's supplemental declaration acknowledges that these CSCs were included in the initial versions of the budgets and later "pull[ed] out."[56]

And, the parties even dispute whether the amounts are disputed:  SCF asserts that the amounts allegedly due are easily calculated, derived from the amendment base amounts and historical calculations, and SCF has already engaged in collaborative dialogue and CSC negotiations with IHS personnel.[57]  In contrast, IHS argues that negotiations on the CSCs have not been completed, and that "[t]hese amounts must be negotiated by the parties to ensure that they meet the definition of CSC in the statute."[58]  There is no doubt that some CSC negotiations occurred between the parties, but the Court cannot determine, on this record, that the amounts of any CSCs that might be due are "clear and certain."

---

[54]  Docket 5-2 at 2 (Am. No. 10 to FY 2011 Funding Agreement for DVPI).

[55]  Docket 17-12 at 2 (4/23/13 Letter from SCF attaching Revised DVPI Budget FY 2013).

[56]  See Docket 28 ¶¶ 12, 14 (9/20/13 Supp. Decl. of Lee Olson).

[57]  Docket 6 ¶¶ 20–22, 27, 29 (8/21/13 Decl. of Lee Olson).

[58]  Docket 5-7 at 12 (8/7/13 Letter IHS to SCF).

SCF argues that the Court should simply adopt SCF's calculations because, under ISDA, pursuant to 25 U.S.C. § 450f(e)(1), the "burden of proof" would be on IHS "to clearly demonstrate[e] the validity of the grounds for declining the contract proposal (or portion thereof)." SCF cites to *Seneca Nation of Indians v. U.S. Department of Health and Human Services.*[59] In that case, IHS failed to respond at all to a tribe's request to amend a contract to reflect an increased per-person rate for certain services. On summary judgment, the district court found that IHS's failure to respond amounted to a declination finding.[60] Therefore, the court concluded that IHS had failed meet its burden to clearly demonstrate the validity of the grounds for declining the contract proposal, as it had not presented any grounds at all for the declination. Accordingly, HIS was ordered to pay the amount that the tribe had requested. Here, in contrast, IHS submitted a lengthy explanation for its declination in its August 2013 correspondence to SCF. And the matter is before the Court for immediate mandamus relief, and not on summary judgment. On the record before this Court on SCF's request for immediate mandamus relief, SCF's claim is not clear and certain.

### B. IHS's Duty is not Purely Ministerial or Plainly Prescribed so as to be Free From Doubt.

Particularly in light of the inclusion of CSCs in SCF's initial budget proposals for the FY in dispute, IHS's obligation to pay the CSCs that SCF is now seeking is not a purely ministerial act that is so plainly prescribed as to be free from doubt.

---

[59] *Seneca Nation of Indians v. U.S. Dep't of Health and Human Servs.*, No. 12-cv-1494-RMC, 2013 WL 2255208 (D.D.C. May 23, 2013).

[60] *Seneca Nation*, 2013 WL 2255208, at *1, 4, 10, 16.

### C. SCF has an Adequate Alternative Remedy.

The parties' current dispute concerns approximately $449,000 in additional funding that SCF seeks for FY 2012.[61] There is insufficient evidence in the record to demonstrate that SCF would be harmed if it did not immediately receive those funds at this time.[62] Rather, on the limited record presently before the Court, it would appear that money damages would provide an adequate alternative remedy to immediate mandamus relief.

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Southcentral Foundation's motion at Docket 3 is **DENIED.**

DATED this 23rd day of October, 2013.

/s/ Sharon L. Gleason
United States District Judge

---

[61] Dockets 1, 3, 5, 17.

[62] SCF has alleged that it has had to pull funds from its reserves to keep the MSPI and DVPI initiatives afloat. Docket 6 ¶ 24 (8/21/13 Decl. of Lee Olson). But that assertion, standing alone, is insufficient to demonstrate that money damages will not be an adequate alternative remedy.