**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

SOUTHCENTRAL FOUNDATION, an
Alaskan corporation,

        Plaintiff,

   vs.

YVETTE ROUBIDEAUX, DIRECTOR,
U.S. INDIAN HEALTH SERVICE,

       Defendant.

Case No. 3:13-cv-00164-SLG

## <u>ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

At Docket 44, Plaintiff Southcentral Foundation (SCF) filed a Motion for Summary
Judgment. At Docket 48, Defendant Yvette Roubideaux, Director of the Indian Health
Service (Defendant or IHS), filed a Cross-Motion for Summary Judgment. IHS filed a
single memorandum of law in opposition to SCF's motion and in support of its cross-
motion,[1] and SCF filed a reply.[2] For the following reasons, the Court will grant in part and
deny in part both motions.

## FACTUAL & PROCEDURAL BACKGROUND

This dispute concerns whether the Indian Self-Determination and Education
Assistance Act, 25 U.S.C. § 450 *et seq.* (the ISDA or Act)[3] applies to the funding of the
Methamphetamine and Suicide Prevention Initiative (MSPI) and the Domestic Violence

---

[1] *See* Docket 47 (IHS Cross-Mot. and Opp'n).

[2] *See* Docket 52 (Reply).

[3] The Act is also known as the ISDEAA.

Prevention Initiative (DVPI), and whether IHS must provide for direct and indirect contract support costs (CSCs) in addition to any amount included for CSCs in the base funding IHS has provided to SCF for those programs. The dispute concerns one year of funding for the two programs.

## I. The ISDA.

The ISDA, enacted in 1975, provides that "[t]he Secretary [of the Department of Health and Human Services (DHHS)] shall establish and carry out a program within [IHS] . . . to be known as the 'Tribal Self-Governance Program' . . . ."[4] Pursuant to this program, the federal government enters into contracts with Indian tribes, through which those tribes provide programs, functions, services, and activities (PFSAs) that otherwise would have been provided by the federal government.[5] Section 458aaa-4(b)(2)(F) describes the types of PFSAs governed by the Act:

> Such [PFSAs] (or portions thereof) include all [PFSAs] (or portions thereof), including grants (which may be added to a funding agreement after an award of such grants), with respect to which Indian tribes or Indians are primary or significant beneficiaries, administered by [DHHS] through [IHS] . . . under the authority of . . . any other Act of Congress authorizing any agency of [DHHS] to administer, carry out, or provide financial assistance to such a [PFSA] (or portions thereof) described in this section that is carried out for the benefit of Indians because of their status as Indians.[6]

With respect to PFSAs, the Act requires that the government provide the "amount of funding that would have been appropriated for the federal government to operate the programs if they had not been turned over to the Tribe"—this portion of funds is known

---

[4]  25 U.S.C. § 458aaa-1.

[5]  *See* 25 U.S.C. § 458aaa-4; *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 634 (2005).

[6]  25 U.S.C. § 458aaa-4(b)(2).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 2 of 33

as the "secretarial amount."[7]  The government must also provide the "full amount" of "contract support costs" (CSCs) incurred by the Indian tribe in performing the contracts.[8] "The Act defines 'contract support costs' as other 'reasonable costs' that a federal agency would not have incurred, but which nonetheless 'a tribal organization' acting 'as a contractor' would incur 'to 'ensure compliance with the terms of the contract and prudent management.'"[9]  The Act further provides that CSCs "shall not duplicate any funding provided" as part of the secretarial amount.[10]

The ISDA provides guidance on how to interpret its provisions.  For instance, the Act states that "[e]xcept as otherwise provided by law, the Secretary shall interpret all Federal laws, Executive orders, and regulations in a manner that will facilitate . . . the inclusion of [PFSAs] (or portions thereof) and funds associated therewith, in the agreements entered into under this section."[11]  Moreover, the Act states that "[e]ach provision of this part and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe."[12]

---

[7]  *Cherokee Nation of Okla. v. United States*, 190 F.Supp.2d 1248, 1258 (E.D. Okla. 2001), *rev'd on other grounds by Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631 (2005); *see also* 25 U.S.C. § 450j-1(a)(1).

[8]  25 U.S.C. § 450j-1(a)(1)-(6); *see also Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181, 2186 (2012).

[9]  *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 635 (2005) (quoting § 450j-1(a)(2)).

[10]  25 U.S.C. § 450j-1(a)(3).

[11]  25 U.S.C. § 458aaa-11(a)(1).

[12]  25 U.S.C. § 458aaa-11(f).

3:13-cv-00164-SLG*, Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 3 of 33

## II. The Initial Congressional Appropriations for MSPI and DVPI.

Congress first appropriated funds for MSPI in fiscal year (FY) 2008.[13]  Specifically, in Public Law 110-161, Congress provided:

> That $14,000,000 is provided for a methamphetamine and suicide prevention and treatment initiative . . . . *Provided further*, That notwithstanding any other provision of law, these funds shall be allocated outside all other distribution methods and formulas at the discretion of the Director of [IHS] and shall remain available until expended.
>
> . . .
>
> *Provided further*, That, notwithstanding any other provision of law, of the amounts provided herein, not to exceed $271,636,000 shall be for payments to tribes and tribal organizations for contract or grant support costs associated with contracts, grants, self-governance compacts, or annual funding agreements between the Indian Health Service and a tribe or tribal organization pursuant to the [the ISDA], as amended, prior to or during fiscal year 2008, of which not to exceed $5,000,000 may be used for contract support costs associated with new or expanded self-determination contracts, grants, self-governance compacts, or annual funding agreements.[14]

In the related House Report, the appropriations committee explained it "expects the Director[] of [IHS] . . . to distribute this funding outside of the normal formulas and methodologies to target the areas with the highest needs in Indian Country."[15]

For FY 2009, Congress again appropriated funds for MSPI, and added funds for DVPI, again to "be allocated at the discretion of the Director of [IHS]," with provisions

---

[13]  Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007).

[14]  *Id.*

[15]  Dep't of the Interior, Env't, and Related Agencies Appropriations Bill, 2008, H.R. Rep. No. 110-187 (2007).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 4 of 33

concerning contract support costs.[16] Appropriations by Congress in later FYs contain similar language.[17]

## III. The IHS Allocation of MSPI and DVPI Funds to SCF in Years Prior to FY 2012.

IHS decided to use a "pilot demonstration project" to distribute the MSPI and DVPI funds through amendments to tribes' existing ISDA contracts.[18] This distribution method was used at the request of the tribes.[19] Funds were to be awarded based on a formula that considered population, poverty burden, and disease burden in the various Indian communities.[20] Prior to receiving MSPI or DVPI funding, tribes were required to submit scopes of work and budgets for the initiatives.

During initial negotiations, IHS made clear that it did not intend to pay CSCs for MSPI (and later DVPI) funding. A January 2010 letter from IHS to the Chairman of the IHS Tribal Self-Governance Advisory Committee stated:

---

[16] Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 735 (2009).

[17] *See* Dep't of the Interior, Appropriation, Pub. L. No. 111-88, 123 Stat. 2904, 2945 (over $16 million for MSPI and $10 million for DVPI to "be allocated at the discretion of the Director of [IHS]"); Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786, 1027-28 (2012) (remaining funds for MSPI and DVPI to "be allocated at the discretion of the Director of [IHS]").

[18] Docket 18 at 2 ¶¶ 6-7 (9/13/13 Decl. of Beverly Cotton); Docket 5-1 at 4 (6/2/09 Letter from Tribes to IHS). The briefing on the motions for summary judgment references documents filed in conjunction with the briefing on the initial motion for preliminary injunction. *See* exhibits filed at Dockets 5 & 17. At Docket 56, IHS filed the administrative record. Many of the relevant documents appear to be identical. The Court, like the parties' briefing on summary judgment, cites primarily to the originally filed documents.

[19] Docket 5-1 at 4 (6/2/09 Letter from Tribes to IHS) (the tribes "particularly appreciate the agency approving the use of amendments to our existing contracts and funding agreements rather than requiring competitive grant proposals for our projects").

[20] *See* Docket 17-5 at 5 (5/3/10 DHHS IHS Report to Congress, MSPI); Docket 21 at 2 ¶ 7 (9/13/13 Decl. of Rose Weahkee).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 5 of 33

[I]n the case of the MSPI, additional . . . CSC[] funds were not available because the IHS had allocated all available CSC funds to existing Tribal contracts and compacts. The statutory "cap" on CSC precluded the IHS from allocating additional direct or indirect CSC than Congress had appropriated under the CSC line item or from allowing Tribes to build direct or indirect CSC into their proposal budgets. [21]

Plaintiff SCF is a tribal organization that is authorized to participate in the self-governance compacting process under the ISDA.[22] Along with other tribes, after the MSPI appropriation, SCF sought MSPI (and later DVPI) funding. The first relevant amendment to the SCF Funding Agreement (FA) was **Amendment Number 11 to the FY 2009 FA**, signed by both parties in September 2009. The amendment explicitly provided: "No contract support cost (CSC) funding is associated with the MSPI funds, and nothing in the FA or the associated compact creates a promise on the part of the IHS to pay the SCF CSC funding in connection with the MSPI funds." The amendment further stated that "SCF still wishes to contract for the MSPI funds and can conduct the MSPI-funded project or activity, despite the absence of CSC funding," and that IHS would include any CSC need associated with MSPI in the annual CSC Shortfall Report to Congress.[23]

But while the contract amendment indicated that there was no CSC funding, SCF Vice President (VP) of Finance and Chief Financial Officer (CFO), Lee Olson, asserts that

---

[21] Docket 5-1 at 11 (1/13/10 Letter IHS to Chairman, IHS Tribal Self-Governance Advisory Committee). This appears to conflict with Mr. Olson's statement that, "[p]rior to 2013, IHS had never singled out 'direct' [CSCs] as a category of contract support for which MSPI and DVPI program funds were not eligible." Docket 6 at 10 ¶ 21 (8/21/13 Decl. of Lee Olson).

[22] Docket 6 at 2-3 ¶ 5 (8/21/13 Decl. of Lee Olson).

[23] Docket 5-1 at 8-10 (FY 2009 FA Am. 11 for MSPI).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 6 of 33

the budgeting for the MSPI initiative reflected, at least in part, a different reality. Mr. Olson explains that although he was told by IHS during the first year of MSPI funding that SCF could not include indirect CSCs in its budget, SCF did include the "full cost of SCF's fringe benefits,"[24] which represents at least some portion of direct CSCs. Mr. Olson asserts that SCF submitted its MSPI budgets in the same manner each year, including fringe benefits and omitting indirect costs.

**Amendment Number 10 to the FY 2010 FA**, signed by both parties in August 2010, provided funding to SCF for Year Three MSPI (FY 2010).[25] It incorporated the terms of Amendment Number 11 to the FY 2009 FA concerning MSPI.

**Amendment Number 14 to the FY 2010 FA**, signed by both parties in September 2010, provided funding to SCF for Year One DVPI (FY 2009). It included nearly identical language to Amendment Number 11 to the FY 2009 FA concerning MSPI.[26] However, VP and CFO Mr. Olson explains that in contrast to the MSPI budgets, SCF included both indirect and direct CSCs in its budget requests for DVPI, as IHS never instructed SCF that it could not do so.[27]

---

[24] *See* Docket 28 at 2 ¶¶ 3-5.

[25] Docket 5-1 at 13 (FY 2010 Am. 10 for MSPI).

[26] Docket 5-1 at 14-17 (FY 2010 FA Am. 14 for DVPI).

[27] Docket 28 at 2 ¶ 6 (9/20/13 Supp. Decl. of Lee Olson).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 7 of 33

***Amendment Number 10 to the FY 2011 FA***, signed by the parties in July and August 2011, provided funding to SCF for Year Two DVPI (FY 2010).[28]   In this amendment, the parties agreed to different language concerning CSCs:

> Contract Support Cost (CSC) funding under this FA will be calculated and paid in accordance with [ISDA] Sections 508(c), 519(b), and 106; IHS CSC Policy . . .; and any Congressional restrictions in appropriations or other statutes.  In accordance with these authorities and subject to available appropriations for CSC, the parties agree that under this Amendment [SCF] will receive direct CSC in the amount of  $0  and indirect CSC in the amount of  $0 .[29]

Although the parties agreed to this revised amendment language, SCF's budget requests for FY 2011 included CSCs in the same manner as previous years (i.e., including both direct and indirect CSCs in the DVPI budget).[30]

As indicated in the original amendment, IHS reported CSC shortfalls to Congress. In IHS's Fiscal Year 2010 Report to Congress on Funding Needs for Contract Support Costs of Self-Determination Awards (Based on Fiscal Year 2009 Data), IHS reported to Congress "a total CSC need of $3,685,676 associated with FY 2009 MSPI-funded projects."[31]   IHS's Fiscal Year 2011 and 2012 Reports to Congress indicated a CSC

---

[28]  Docket 5-2 at 1-4 (FY 2011 Am. 10 for DVPI).

[29]  Docket 5-2 at 2 (FY 2011 FA Am. 10 for DVPI).

[30]  Docket 28 at 2-3 ¶¶ 5, 7 (9/23/13 Supp. Decl. of Lee Olson).

[31]  IHS FY 2010 Report to Congress on Funding Needs for CSCs of Self-Determination Awards (Based on FY 2009 Data), available at http://www.ncai.org/policy-issues/tribal-governance/budget-and-appropriations/contract-support/IHS_FY_2010_CSC_Shortfall_Report_-_2009_Narrative_and_Data.pdf.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 8 of 33

shortfall, but did not indicate what amount of shortfall, if any, was due to the MSPI and DVPI programs.[32]

## IV. The FY 2012 Amendments.

The current litigation concerns the 2012 fiscal year. In July 2012, IHS informed SCF that it had been awarded DVPI funding (Year Three funding) totaling $482,554.[33] And in August 2012, IHS informed SCF that SCF had been awarded MSPI funding (Year Four funding) totaling $599,596.[34]

IHS and SCF then unsuccessfully attempted to negotiate the language concerning CSCs for the contract amendments. Negotiations continued into 2013, focusing on direct and indirect CSCs and how the FA contract amendments would reflect the potential for CSC payment.[35] The Court focuses on a limited exchange of letters prior to the initiation of this litigation:

---

[32] *See* IHS FY 2011 Report to Congress on Funding Needs for CSCs of Self-Determination Awards (Based on FY 2010 Data) CORRECTED, available at http://www.ncai.org/policy-issues/tribal-governance/budget-and-appropriations/contract-support/FY2011_IHS_CSC_Report.pdf; IHS FY 2012 Report to Congress on Funding Needs for CSCs of Self-Determination Awards (Based on FY 2011 Data), available at http://www.ncai.org/policy-issues/tribal-governance/budget-and-appropriations/contract-support/FY2012_IHS_CSC_Report.pdf.

[33] Docket 6 at 7 ¶ 14 (8/21/13 Decl. of Lee Olson); *see also* Docket 5-2 at 5 (7/13/12 email IHS to SCF concerning release of $482,554 in DVPI funds for DVPI Year 3).

[34] Docket 6 at 6 ¶ 13 (8/21/13 Decl. of Lee Olson); *see also* Docket 5-2 at 15 (8/21/12 email IHS to SCF concerning release of $599,596 in MSPI funds for MSPI Year 4).

[35] *See, e.g.*, Docket 17-8 at 1-2 (8/2/12 Letter SCF to IHS); Docket 5-2 at 15 (8/21/12 email from IHS); Docket 5-3 at 8 (12/19/12 through 1/9/13 emails between SCF and IHS); Docket 5-3 at 17 (1/10/13 Email SCF counsel to IHS); Docket 5-3 at 19 (4/12/13 Letter Tahsuda, IHS, to Leaders); Docket 28-1 at 1-2 (4/23/13 Letter SCF to IHS); Docket 5-5 at 9-10 (6/25/13 Letter Olson, SCF to Roubideaux, IHS concerning final offer); Docket 5-6 at 1 (8/7/13 Letter Roubideaux, IHS, to Gottlieb, SCF).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 9 of 33

In August 2012, SCF sent to IHS a Revised Year 4 Funding proposal for MSPI.[36] As in previous years, SCF did not include indirect CSCs in its MSPI budget.[37] However, SCF included various personnel costs and fringe benefits, i.e., at least some direct CSCs.[38] SCF's August 2012 MSPI proposed budget provided, in part:[39]

| | |
|---|---|
| Sub-total Personnel | $356,352 |
| Sub-total Fringe (percentages on personnel salaries) | $133,826 |
| Total All Categories (the sum of personnel, fringe, travel, and supplies) | $599,596 |

Around that time, SCF also provided IHS with SCF's proposed budget for Year 3 DVPI (FY 2013). As in previous years, SCF included both direct and indirect CSCs in its DVPI budget, which provided, in part:[40]

| | |
|---|---|
| Total Personnel (sum of salaries and fringe on salaries) | $226,211 |
| Total Direct Costs (sum of personnel, travel, program supplies, contractual, and other) | $397,871 |
| Indirect Costs | $84,682 |

---

[36] Docket 56-14 at 1.

[37] Docket 28 at 2 ¶ 4 (9/20/13 Supp. Decl. of Lee Olson).

[38] *See* Docket 56-14 at 18; Docket 28 at 4 ¶ 12 (9/20/13 Supp. Decl. of Lee Olson).

[39] Docket 56-14 at 18.

[40] Docket 56-15 at 21.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 10 of 33

| Total (sum of "Total Direct Costs" and "Indirect Costs") | $482,554 |
|---|---|

After additional negotiations, on April 12, 2013, the Agency Lead Negotiator (ALN) for IHS indicated through a letter to Alaska tribes and tribal organizations that IHS would not agree to estimate an amount for direct CSCs for MSPI and DVPI funding. The negotiator explained that IHS's position was that paying direct CSCs was improper because the MSPI and DVPI programs are non-recurring and because payment of direct CSCs would be duplicative of what IHS had already agreed to pay for fringe benefits in the MSPI and DVPI awards.[41]

Soon after, on April 23, 2013, through two separate letters sent to different representatives at IHS, SCF provided IHS with revised MSPI and DVPI budget proposals.[42] The revised MSPI proposal provided, in part:[43]

| Sub-total personnel | $392,142 |
|---|---|
| Sub-total fringe | $98,036 (25% of $392,142) |
| Total all categories (sum of personnel, sub-total fringe, travel, supplies, and other) | $599,596 |

The revised MSPI budget also sought the following additional funds:

| Indirect on MSPI funds | $206,861 (34.5% of $599,596) |
|---|---|

---

[41] *See* Docket 5-6 at 4; *see also* Docket 5-3 at 19 (4/12/13 Letter Tahsuda, IHS, to Leaders).

[42] Docket 28-1 at 1-2 (4/23/13 Letter SCF to IHS, attaching revised MSPI budget); Docket 28-1 at 3-4 (4/23/13 Letter SCF to IHS, attaching revised DVPI budget).

[43] Docket 28-1 at 2 (4/23/13 Letter SCF to IHS, attaching revised MSPI budget).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 11 of 33

| Indirect on MSPI Other Funds | $16,632 (34.5% of Direct Costs of $48,209, which appear on the budget without calculations) |

In additional columns, the revised budget reflected "Actual Cost of Fringe & Indirect" of $146,245, and "Paid by Other Sources" of $48,209. Mr. Olson's August 2013 declaration explains how he calculated "Paid by Other Sources," also referred to as direct CSCs on MSPI,[44] and describes the $48,209 as the "net amount due" in direct support costs for the MSPI program. Overall, while SCF's prior MSPI budget in August 2012 appears to have requested a total of $599,596, SCF's revised MSPI budget in April 2013 appears to request a total of $871,298 ($599,596 + $206,861 + $48,209 + $16,632).

The revised DVPI proposal provided, in part:[45]

| Total FTE's/Salaries | $251,377 |
| Total Fringe | $62,846 (25% of $251,377) |
| Total Direct Costs | $482,554 |
| Indirect Costs of Requested Funds | (not specified) |
| Total | $482,554 |

Unlike the MSPI budget, the April 2013 DVPI budget proposal did not specify an additional amounts for indirect costs.

---

[44] In an affidavit filed with the Court, Mr. Olson explains: Sub-total personnel is $392,142, and SCF's total fringe benefit costs for these personnel is 37.3% (37.3% of $392,142 is $146,269, though Mr. Olson's declaration states it is $146,245). IHS applies a 25% offset (i.e., 25% of $392,142 is $98,036). Thus, SCF calculated a "net amount due" of $48,209 in direct CSCs for MSPI ($146,269 – $98,036 = $48,209). Docket 6 at 13-14 ¶ 30 (8/21/13 Decl. of Lee Olson).

[45] Docket 28-1 at 4 (4/23/13 Letter SCF to IHS, attaching revised DVPI budget).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 12 of 33

Mr. Olson's August 2013 declaration asserts that the revised April 2013 DVPI budget clearly excluded indirect and direct CSCs from the base amount.[46] And yet while no numerical value appears on the April 2013 DVPI budget for indirect CSCs, the revised budget included a request for fringe costs of $62,846 in the base amount. Mr. Olson's August 2013 declaration appears to suggest that in its April 2013 budget proposal, SCF requested that IHS pay to SCF $124,016 in indirect CSCs (25.7% of $482,554), $42,734 in additional direct CSCs (calculated from total salaries), plus $10,983 in indirect CSCs on direct CSCs (25.7% of $42,734),[47] in addition to the base funding of $482,554 for DVPI. These additional requests are not evident in SCF's April 2013 budget submission.

On June 25, 2013, SCF sent to IHS a letter titled "Final Offers regarding MSPI and DVPI Amendments to [SCF]'s FY 2012 [FA]."[48] SCF maintains this letter constituted SCF's final offer, pursuant to 25 U.S.C. § 458aaa-6(b), which provides that where "the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement," the tribe may submit a "final offer."[49]

In the letter, SCF indicated as follows:

- **_For MSPI._** During previous negotiations, "the ALN [for IHS] proposed" that the contract amendment provide for $206,861 for indirect CSCs and $0 for direct CSCs. SCF requested total CSCs of $271,702, including $48,209 for direct

---

[46] Docket 28 at 5 ¶ 16 (9/20/13 Supp. Decl. of Lee Olson).

[47] Docket 6 at 14 ¶ 31 (8/21/13 Decl. of Lee Olson). In an affidavit filed with the Court, Mr. Olson explains: Total approved program-budgeted salaries for DVPI is $251,377, and SCF's total fringe benefit costs for these budgeted salaries is 42% (42% of $251,377 is $105,578). IHS applies a 25% offset (i.e., 25% of $251,377 is $62,844). Thus SCF requested an additional $42,734 in direct CSCs for DVPI ($105,578 – $62,844 = $42,734). Docket 6 at 14 ¶ 31.

[48] Docket 5-5 at 9-10 (6/25/13 Letter Olson, SCF to Roubideaux, IHS).

[49] _See_ 25 U.S.C. § 458aaa-6(b) & (d).

3:13-cv-00164-SLG, _Southcentral Foundation v. Roubideaux_
Order re Cross-Motions for Summary Judgment
Page 13 of 33

CSCs and $223,493 for indirect CSCs (which includes indirect CSCs on the funding amount and on direct CSCs).

- ***For DVPI.*** The "ALN proposed" that the contract amendment provide for $124,106 for indirect CSCs and $0 for direct CSCs. SCF requested total CSCs of $177,733, including $42,734 for direct CSCs and $134,999 for indirect CSCs (which includes indirect CSCs on the funding amount and on direct CSCs).

With respect to both MSPI and DVPI, SCF further stated "SCF disagrees with the ALN's rejection of any estimated requirement of direct CSC and the related indirect CSC on the direct CSC."[50] But it is not clear in the record that the ALN had proposed the referenced $206,861 or $124,106 amounts. In its June 25 letter, SCF also responded to an IHS concern that IHS had expressed in previous negotiations: that IHS could not pay direct CSCs because direct CSCs are recurring, while the MSPI and DVPI projects are non-recurring. SCF asserted that IHS would be able to decline to pay MSPI and DVPI direct CSCs in future years pursuant to 25 U.S.C. § 450j-1(b)(2)(E) if MSPI and DVPI were no longer funded, as that section permits a reduction in funding upon "completion of a contracted project, activity, or program."[51]

Also on June 25, 2013, SCF sent a letter to the Director of the Alaska Area Native Health Service in Anchorage, Alaska, along with draft amendment language, containing a more limited request for funding. SCF sent this letter pursuant to 25 U.S.C. § 458aaa-6(c)(1)(D), which allows the Secretary to sever and assign portions of funding where the Secretary otherwise rejects a final offer. The draft amendment language that SCF submitted in that letter sought only the base funding amounts for the two programs and

---

[50] Docket 5-5 at 10 (6/25/13 Letter Olson, SCF to Roubideaux, IHS).

[51] Docket 5-5 at 9-12 (6/25/13 Letter Olson, SCF to Roubideaux, IHS).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 14 of 33

recognized that the tribe's indirect CSC requirements were $206,861 for MSPI and $124,016 for DVPI.[52]

On August 7, 2013, IHS responded to SCF's June 25, 2013 "final offer" letter.[53] IHS maintained that SCF's letter was not a valid final offer under the ISDA because the Act did not apply to the funds at issue.[54] And IHS indicated that even if the letter were a proper final offer governed by the Act, IHS would reject the final offer for the following reasons:

**IHS asserts SCF's proposal is not a proper final offer because it is not the result of prior negotiations.** Pursuant to 25 U.S.C. § 450j-1(a)(3)(B), "[o]n an annual basis, . . . the tribe or tribal organization shall have the option to negotiate with the Secretary the amount of funds that the tribe or tribal organization is entitled to receive."[55] A "final offer" should be submitted if "the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement."[56] IHS's August 2013 letter maintains that "SCF never made the proposal included in its letter to the [Alaska Area Native Health Service]" and "SCF offers no explanation of how it reached the amount of direct and indirect CSC need that it proposes in its [June 2013] letter."[57]

---

[52]  Docket 5-5 at 1 (6/25/13 Letter SCF to IHS providing severed proposal).

[53]  Docket 5-6 at 1 (8/7/13 Letter Roubideaux, IHS, to Gottlieb, SCF, rejecting final offer).

[54]  Docket 5-6 at 2-4 (8/7/13 Letter Roubideaux, IHS, to Gottlieb, SCF, rejecting final offer).

[55]  25 U.S.C. § 450j-1(a)(3)(B).

[56]  *See* 25 U.S.C. § 458aaa-6(b) & (d).

[57]  Docket 5-6 at 4 (8/7/13 Letter Roubideaux, IHS, to Gottlieb, SCF, rejecting final offer).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 15 of 33

**IHS asserts it was "unable to determine if any of the CSC are duplicative of costs included in the MSPI/DVPI awards."**[58] IHS asserts that although "certain portions of fringe benefits and some forms of insurance" may be eligible to be paid as direct CSCs, "SCF's budgets for the MSPI/DVPI already include these costs."[59] IHS provides an example: the initial DVPI Year 3 budget included a line item for "indirect costs" of $84,682, while the revised budget did not (including only a "-"). However, the final total dollar amount remained the same, "which leads the IHS to conclude that the award funded SCF's full costs."[60] Thus, IHS maintained that further negotiations were required to ensure that IHS was not paying duplicate CSCs.

**IHS asserts payment of direct CSCs would violate IHS policy concerning direct CSCs.** IHS asserts that MSPI and DVPI are pilot demonstration projects funded through one-time, non-recurring funds. Direct CSCs generally cover only recurring costs. IHS asserts that it cannot pay recurring direct CSCs for a program that could be terminated.[61] Moreover, because SCF's proposal for indirect CSCs on direct CSCs is contingent upon IHS accepting SCF's proposal for direct CSCs, IHS would not increase indirect CSCs in the requested manner.

---

[58] Docket 5-7 at 5.

[59] *Id.*

[60] *Id.*

[61] Docket 5-7 at 6.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 16 of 33

HIS concluded its August 2013 letter by indicating that it "is open to resuming negotiations regarding SCF's indirect CSC estimates need amounts."[62]

## V. The Current Dispute.

On August 21, 2013, SCF initiated this action against IHS, and filed a motion seeking preliminary injunctive relief.[63]  The Complaint sought the following relief:

(A)  An immediate injunction compelling IHS to enter into two contract amendments awarding to SCF the subject MSPI and DVPI program funds in the amounts of $599,596 and $482,554, respectively, and to compel the immediate payment of these funds;

(B)  An immediate injunction compelling IHS to specify in the foregoing contract amendments SCF's right to $223,493 and $134,999, respectively, in "indirect" contract support costs associated with the referenced MSPI and DVPI program funds;

(C) An immediate injunction compelling IHS to specify in the foregoing contract amendments SCF's right to $48,209 and $42,734, respectively, in "direct" contract support costs associated with the referenced MSPI and DVPI program funds.

SCF also sought a preliminary injunction,[64] which the Court denied on October 23, 2013.[65]  And SCF sought attorneys' fees and "further relief as the interests of justice and equity may require."

On September 10, 2013, while this litigation was pending, the parties entered into two contract amendments—**Amendment Number 15 to FY 2012 FA** for Year 4 MSPI

---

[62]  Docket 5-7 at 8.

[63]  Docket 1 (Complaint); Docket 3 (Mot. Preliminary Injunction); Docket 5 (SCF Memorandum).

[64]  At oral argument on the motion for a preliminary injunction, SCF clarified that it was seeking mandamus relief in the form of an order requiring immediate payment of MSPI and DVPI funding.  Docket 37 at 1, 8 (Order Denying Motion for Immediate Injunctive Relief).

[65]  Docket 37 (Order Denying Motion for Immediate Injunctive Relief).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 17 of 33

and **Amendment Number 14 to FY 2012 FA** for Year 3 DVPI, awarding SCF MSPI and

DVPI program funds in the amounts of $599,596 and $482,554, respectively. Through

these amendments, SCF has received the relief it requested in Part (A) of its Complaint.

The amendments address CSCs as follows:

> The provision of this agreement regarding contract support costs has been reserved per [IHS]'s letter dated August 7, 2013, and the appeal of that decision by [SCF] in *Southcentral Found. v. Roubideaux*, 3:13-cv-00164-SLG (D. Alaska filed Aug. 21, 2013). Notwithstanding execution of this agreement, both parties may continue to litigate the contract support costs issues identified in IHS's August 7, 2013 letter and may choose to appeal any final order issued pursuant to such litigation.[66]

The budget submitted with Amendments 14 and 15 does not indicate whether any of the

$599,596 for MSPI or $482,554 amounts was intended to include CSCs.[67] It appears

that the parties agreed to disagree as to what amount, if any, of the funds awarded would

be allocated to indirect and direct CSCs.

The motions for summary judgment were filed in December 2013 and January

2014. Oral argument was heard on March 28, 2014.[68] The remainder of this Order

considers whether SCF is entitled to the relief sought in (B) and (C) of SCF's complaint.

## JURISDICTION

The parties agree that the Court has jurisdiction to hear this case pursuant to 25

U.S.C. § 450m-1 and 28 U.S.C. § 1331.

---

[66] Docket 17-1 at 4-6 (FY 2012 FA Am. 15 for MSPI); Docket 17-2 at 3-6 (FY 2012 FA Am. 14 for DVPI).

[67] Docket 17-1 at 1.

[68] Docket 58 (Minutes); Docket 63 (Transcript).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 18 of 33

The parties dispute what standard of review applies. IHS asserts: (1) that IHS's allocation of MSPI and DVPI funding is "beyond judicial review"; and (2) regardless of whether the ISDA governs, the Court should apply the Administrative Procedures Act (APA) standard of review, determining only whether IHS's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[69] SCF asserts that the ISDA governs and similar cases support application of a *de novo* standard of review.[70]

## I. The *Lincoln* Rule does not apply.

IHS cites *Lincoln v. Vigil* for the proposition that "[t]he allocation of funds from a lump-sum appropriation like IHS's is an administrative decision committed to agency discretion" and is "beyond judicial review."[71] In *Lincoln*, the Supreme Court considered whether IHS's decision to cancel the Indian Children's Program, a pilot project for disabled Indian children, was within the agency's discretion and not subject to judicial review under the APA. There, Congress had allocated funds to IHS without specifically mentioning the Indian Children's Program.[72] The Supreme Court held that "[t]he allocation of funds from a lump-sum appropriation is . . . traditionally regarded as committed to agency discretion." And because there was no legally binding obligation on

---

[69] Docket 47 at 8-9, 12, 22 (IHS Cross-Mot. and Opp'n).

[70] Docket 44 at 33 (Mot.); Docket 52 at 4-5 (Reply).

[71] Docket 47 at 12 (IHS Cross-Mot. and Opp'n) (citing *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993)).

[72] 508 U.S. at 186.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 19 of 33

IHS's lump-sum appropriation from Congress, the Court held that the decision to terminate the program was likewise within IHS's discretion.[73]

Here, in contrast, Congress's appropriations to IHS specifically indicated that the funds should be used for MSPI and DVPI. Moreover, as noted by SCF, SCF is not challenging IHS's allocation of funds for MSPI and DVPI, but only IHS's assertion that it is not bound by 25 U.S.C. § 450j-1(a)(2), which would require IHS to pay CSCs related to MSPI and DVPI in addition to the appropriated program funds.[74] For both of these reasons, IHS's argument regarding the *Lincoln* rule is unpersuasive.

## II.    The ISDA governs MSPI and DVPI funding.

The parties dispute whether the ISDA governs appropriations for MSPI and DVPI. SCF asserts the Court should apply a *de novo* standard of review pursuant to the ISDA and case law. IHS asserts that the ISDA does not apply, and that the Court should apply the APA standard of review regardless. IHS reasons that if the ISDA governs MSPI and DVPI funding, the ISDA does not include a standard of review, so the APA standard of review applies; and if the ISDA does not govern MSPI and DVPI funding, the APA standard of review is appropriate because the Court would be reviewing a general agency determination.[75] To determine the standard of review (and the substantive issues of this dispute), the Court must first determine whether the ISDA applies.

---

[73] *Id.* at 194.

[74] Docket 52 at 2-3 (Reply).

[75] Docket 47 at 23-24.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 20 of 33

### A. The language of the ISDA and the Congressional appropriations support the conclusion that the ISDA governs MSPI and DVPI funding.

SCF asserts that the text of the ISDA provides that the Act applies to all PFSAs that are "carried out for the benefit of Indians because of their status as Indians."[76] SCF asserts "[t]he MSPI and DVPI initiatives plainly fit the controlling language of the ISDA."[77] Furthermore, SCF asserts that, pursuant to 25 U.S.C. § 458aaa-11, the Secretary is required to facilitate inclusion of programs under the ISDA, and to resolve any ambiguity in the Act in favor of Indians.[78]

IHS asserts that Congress did not intend that MSPI and DVPI be governed by the ISDA.[79] IHS observes that Congress appropriated these funds "notwithstanding any other provision of law" to be distributed "outside all other distribution methods and formulas at the discretion of the Director of [IHS]."[80] Thus, IHS maintains Congress intended IHS to fashion a program outside of the ISDA's funding scheme.[81]

The Court concludes, as indicated in the Court's August 1, 2014 denial of SCF's Second Motion for Preliminary Injunction, that the ISDA governs.[82] The Court does not read the "notwithstanding" language in Congress's appropriations of MSPI and DVPI

---

[76] Docket 44 at 22 (Mot.) (quoting 25 U.S.C. § 458aaa-4(b)(2)(F)).

[77] Docket 44 at 22.

[78] Docket 44 at 22-23.

[79] Docket 47 at 11 (IHS Cross-Mot. and Opp'n).

[80] Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007); Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 735 (2009).

[81] Docket 47 at 10-11 (IHS Cross-Mot. and Opp'n).

[82] *See* Docket 76 (Order).

3:13-cv-00164-SLG*, Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 21 of 33

funds as broadly as asserted by IHS so as to place these programs entirely outside of the ISDA. For Congress did not, as IHS asserts, "authoriz[e] IHS to *administer* the MSPI/DVPI notwithstanding any other law"[83]—rather, Congress only authorized IHS to "*allocate* [the funds] outside all other distribution methods and formulas at the discretion of the Director of [IHS]."[84] Both parties acknowledge that Congress intended the MSPI and DVPI funds "to target the areas with the highest needs in Indian Country."[85] Presumably, that is precisely the reason Congress gave IHS this discretion to allocate these funds among the tribes.

Moreover, even if the Congressional appropriations language were ambiguous, the Court agrees with SCF that the ISDA should be "liberally construed for the benefit of the Indian participating in self-governance," and that this requires that the Court "facilitate . . . the inclusion" of programs within the ISDA.[86] The MSPI and DVPI are programs intended to help Indians, and are therefore included with the ISDA.[87] The Court finds the scope of the "notwithstanding" language is limited, and provides IHS with discretion

---

[83] *See* Docket 47 at 11 (emphasis added).

[84] *See* Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007) (emphasis added).

[85] Dep't of the Interior, Env't, and Related Agencies Appropriations Bill, 2008, H.R. Rep. 110-187 (2007) (Congress expected IHS "to distribute this funding outside of the normal formulas and methodologies to target the areas with the highest needs in Indian Country."); Docket 47 at 11 (IHS Cross-Mot. and Opp'n) ("Congress did not intend for every tribe to benefit from the initiatives . . . .").

[86] 25 U.S.C. § 458aaa-11(a)(1) & (f).

[87] *See* 25 U.S.C. § 458aaa-4(b)(2)(F).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 22 of 33

only with respect to which tribes to allocate funds among the various Indian tribes.  It does

not permit a wholesale abandonment of the ISDA by the IHS with respect to these funds.

**B. IHS's remaining arguments concerning inapplicability of the ISDA are unpersuasive.**

IHS asserts that MSPI and DVPI cannot be governed by the ISDA because IHS's

method of distributing these funds differs from its method of distributing other ISDA

funds.[88]  But if, in fact, IHS has adopted a method of distributing these funds to the tribes

that is inconsistent with the ISDA, that cannot serve as a basis for finding the Act

inapplicable.

IHS also asserts that requiring IHS to follow the ISDA's provisions regarding CSCs

"makes no sense" because it means that "Congress gave IHS leave to ignore the

requirements of subsection (a)(1), under which IHS would identify a share for every tribe,

but not subsection (a)(2) of 25 U.S.C. § 450j-1, which directs the payment of CSC."[89]

Instead, IHS asserts that the ISDA requires an all or nothing approach: "IHS either had

the authority to . . . determine which contractors to fund, the amount of each award, and

---

[88]  Docket 47 at 6-7, 18-19 (IHS Cross-Mot. and Opp'n).  For instance, IHS asserts that IHS required tribes to submit budgets to receive MSPI and DVPI funding, which tribes need not do for other ISDA funds, and that urban tribes were eligible for MSPI and DVPI funds, while they were ineligible for other ISDA funds.

IHS also asserts that the "conflict of law provisions" make it clear the agreements are governed by their own terms rather than the ISDA.  But this would not resolve the current dispute because no contract yet governs the current dispute and the prior contracts are ambiguous.  Even if amendments in the initial years were unambiguous, *see, e.g.,* Docket 5-1 at 8-10 (Am. No. 11 to the FY 2009 FA re: MSPI for FY 2008 and 2009), the language of more recent Amendment No. 10 to the FY 2011 FA concerning DVPI ambiguously stated that CSCs would be "calculated and paid in accordance with . . . the [ISDA]."  Docket 5-2 at 1-2.  Moreover, any ambiguity must be interpreted in favor of the tribes.  *See* 25 U.S.C. § 458aaa-11(a)(1) and (f).

[89]  Docket 47 at 21 (IHS Cross-Mot. and Opp'n).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 23 of 33

the instrument to fund each award, or the Agency had no authority to take any of those actions."[90]  The Court disagrees.  Congress specifically provided that IHS could direct these particular program funds to the communities with the most need, but it did not specifically authorize IHS to disregard the other requirements of the ISDA.

This conclusion is both consistent with the ISDA—which requires the Secretary to "facilitate" inclusion of programs under the ISDA[91]—and the language of the appropriations.

## III. The Standard of Review.

Generally, judicial review of federal agency administrative decisions is governed by the Administrative Procedures Act, particularly where the statute at issue does not provide for a standard of review.[92]  Here, however, the statute does provide a standard of review, as it requires the Secretary to "demonstrate[e] by clear and convincing evidence the validity of the grounds for rejecting the offer."[93]

### DISCUSSION

SCF submitted a final offer in June 2013 which IHS rejected in August 2013.  In this regard, 25 U.S.C. § 458aaa-6(c) provides as follows:

If the Secretary rejects a final offer, she must provide:

---

[90]  Docket 47 at 22.

[91]  *See* 25 U.S.C. §§ 458aaa-4(b)(2) & 458aaa-11(a)(1).

[92]  *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).

[93]  25 U.S.C. § 458aaa-6(d); *see also* 25 U.S.C. § 458aaa-17 ("In any appeal (including civil actions) involving decisions made by the Secretary under this part, the Secretary shall have the burden of proof of demonstrating by clear and convincing evidence—(1) the validity of the grounds for the decision made; and (2) that the decision is fully consistent with provisions and policies of this part.").  *See also* 25 U.S.C. § 450m-1(a).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 24 of 33

(A) a timely written notification to the Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority, that—(i) the amount of funds proposed in the final offer exceeds the applicable funding level to which the Indian tribe is entitled under this part.[94]

The Secretary must also provide "technical assistance to overcome the objections" and a hearing, although the tribe may elect instead to initiate an action in federal district court pursuant to 25 U.S.C. § 450m-1(a),[95] as SCF did here. In addition, if the Secretary rejects a final offer, pursuant to 25 U.S.C. § 458aaa-6(c)(1)(D), she must "provide . . . the Indian tribe with the option of entering into the severable portions of a final proposed compact or funding agreement, or provision thereof, (including a lesser funding amount, if any), that the Secretary did not reject, subject to any additional alterations necessary to confirm the compact or funding agreement to the severed provisions."

At issue is whether IHS has met its statutory burden of proof when it rejected SCF's final offer. In this regard, 25 U.S.C. § 458aaa-6(d) provides as follows:

[T]he Secretary shall have the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer (or a provision thereof) made under subsection (b) [defining final offers] . . . .[96]

Here, the two programs and the two types of CSCs at issue—direct and indirect—warrant separate analysis.

---

[94] 25 U.S.C. § 458aaa-6(c)(1)(A)(i).

[95] 25 U.S.C. § 458aaa-6(c)(1).

[96] 25 U.S.C. § 458aaa-6(d); *see also* 25 U.S.C. § 458aaa-17 ("In any appeal (including civil actions) involving decisions made by the Secretary under this part, the Secretary shall have the burden of proof of demonstrating by clear and convincing evidence—(1) the validity of the grounds for the decision made; and (2) that the decision is fully consistent with provisions and policies of this part.").

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 25 of 33

### A. Indirect CSCs on MSPI.

In IHS's August 2013 letter, IHS indicated that it rejected SCF's final offer because SCF violated the Act by failing to negotiate its proposal, and that "[u]nlike several other Alaska T/TO that did negotiate CSC amounts for their MSPI/DVPI awards, SCF never made the proposal included in its letter to the [Alaska Area Native Health Service]."[97] SCF responds that IHS's argument that the proposed contract language was never fully negotiated must fail because "[t]he matter came to a head with a final offer precisely because the negotiations failed . . . . [IHS's] argument reads the final offer process right out of the statute" and "ignores the inconvenient fact that SCF tried to negotiate amounts for CSCs for almost a year."[98]  On this point, the Court agrees with SCF.  The parties unsuccessfully negotiated for many months, and at some point, SCF must be entitled to make a final offer.

Moreover, from review of SCF's April 2013 budget submission, IHS's statement that SCF had never before submitted its June proposal appears to be inaccurate—SCF's April 2013 letter contains the same proposal as the June 2013 final offer for MSPI.  IHS concedes that it did not consider the April 2013 proposal in making its August 2013 decision because the ""revised budget was addressed to an individual who was no longer employed at IHS at the time."[99]  But IHS's statement that it did not consider SCF's April

---

[97]  Docket 5-7 at 4.

[98]  Docket 44 at 43.

[99]  Docket 47 at 34 n.123 (IHS Cross-Mot. and Opp'n).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 26 of 33

2013 proposal does not constitute "clear and convincing evidence [of] the validity of the grounds for rejecting [SCF's] offer."[100]

IHS asserts that "SCF offers no explanation of how it reached the amount of direct and indirect CSC need that it proposes in its letter."[101] However, SCF's April 2013 MSPI proposal and its June final offer proposal for indirect CSCs on MSPI are both quite straightforward: SCF requested $206,861, 34.5% of $599,596. And SCF submitted a severed request that identified this amount of funds.[102] In SCF's more recent briefing, it asserts that 34.5% is the proper indirect CSC rate for an on-site program like MSPI, which correlates with rates "issued by the DHHS Division of Cost Allocation."[103] IHS does not seem to dispute that this rate is proper. IHS asserts only that the rate is just "one part of the indirect CSC negotiation," as CSC negotiations would have required that SCF "submit its approved rate" and supporting documents as well as underlying calculations.[104] But the burden was on IHS to provide "notification" with "a specific finding" explaining why "the amount of funds proposed in the final offer exceeds the applicable funding level to which [SCF wa]s entitled.[105] With respect to the MSPI indirect CSCs, IHS's August 2013

---

[100] 25 U.S.C. § 458aaa-6(d).

[101] Docket 5-7 at 4.

[102] Docket 5-5 at 1 (6/25/13 Letter SCF to IHS providing severed proposal); Docket 5-5 at 10 (6/25/13 Letter SCF to HIS providing Final Offers).

[103] Docket 44 at 43 (Mot.).

[104] Docket 47 at 31-32.

[105] 25 U.S.C. § 458aaa-6(c)(1)(A)(i).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 27 of 33

letter falls short of meeting this burden, and also does not provide any "technical assistance" as to how SCF could have corrected its request.[106]

Accordingly, with respect to the indirect CSCs for MSPI, IHS has failed to meet its burden to provide "clear and convincing evidence [of] the validity of the grounds for rejecting [SCF's] offer."[107]   The Court will grant in part SCF's motion for summary judgment and will require that IHS provide a revised MSPI contract amendment that specifies SCF's right to a minimum of $206,861 in indirect CSCs associated with the MSPI program funds.  This is a portion of the relief requested in Part (B) of SCF's Complaint.[108]

### B. Direct CSCs on MSPI.

With respect to direct CSCs on MSPI, the Court finds merit to IHS's argument that SCF "originally included all costs that, in [SCF's] review, would otherwise qualify as direct CSC in the MSPI budget."[109]  For it appears that SCF included at least some direct CSCs in its August 2012 MSPI budget request and it then set out a different amount for these direct costs in its April 2013 request.[110]   Accordingly, IHS has provided clear and convincing evidence for its rejection of SCF's proposal with respect to direct CSCs for MSPI—additional payments may have been duplicative with amounts already included in the base funding amount.  The Court further notes that SCF failed to clearly explain its

---

[106]  *See* 25 U.S.C. § 458aaa-6(c)(1)(B).

[107]  *Id.*

[108]  Docket 1 (Complaint).  As acknowledged by SCF, this litigation would not cause IHS to immediately pay any sums of money to SCF.  Docket 44 at 2.

[109]  Docket 47 at 34 (citing Docket 28 ¶ 3 (9/20/13 Supp. Decl. of Lee Olson)).

[110] Docket 56-14 at 18 (SCF's August 2012 MSPI proposed budget); Docket 28-1 at 2 (4/23/13 Letter SCF to IHS, attaching revised MSPI budget).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 28 of 33

MSPI direct CSC calculations in either its April or June 2013 budget proposals. The April 2013 budget reflects that SCF seeks $48,209 for certain direct costs, but without explanation. SCF asserts that the "Director [of IHS] could easily determine if the amounts met 'the definition of CSC' or are 'in excess of the applicable funding level'" from the documents that SCF submitted to IHS."[111] The Court disagrees. The reasoning provided in Mr. Olson's August 2013 declaration is not apparent in either the April 2013 budget or the June 2013 final offer letter, and the Court has inadequate information to evaluate SCF's assertion that IHS simply should have known the correct amount. Furthermore, SCF's reliance on calculations subsequently provided in this litigation do not provide an adequate basis to find that the Secretary failed to meet her burden in rejecting this component of the June final offer in August 2013. In short, IHS has demonstrated that SCF is not entitled to court-ordered direct CSCs for the MSPI at this juncture.[112]

### C. Indirect and Direct CSCs on DVPI.

IHS's August 2013 letter provided several explanations for rejecting SCF's proposal, which the Court finds persuasive with respect to DVPI funding.

*First,* unlike the April 2013 MSPI budget proposal which specifically indicated that SCF sought 34.5% of total costs in indirect CSCs for MSPI, SCF's April 2013 DVPI budget proposal indicates that indirect CSCs for DVPI are "-". This does not provide IHS with a clear indication of SCF's indirect cost calculations.

---

[111] Docket 44 at 43 (Mot.).

[112] IHS acknowledges, however, that "if indirect CSC were determined to be appropriate under the statute, the application of indirect cost rate to direct cost base may be appropriate." Docket 5-7 at 7 n.7. This would appear to be an appropriate subject for future negotiations that should be readily resolved.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 29 of 33

***Second,*** there is no indication in the record that SCF clearly informed IHS of its intention to use the rate of 25.7% for off-site indirect CSCs for DVPI. It appears that Mr. Olson's August 2013 declaration is the first time that SCF set out its proposed 25.7% off-site indirect CSC rate for DVPI. Likewise, although Mr. Olson's August 2013 declaration provides calculations concerning direct CSCs for DVPI, these numbers do not appear in the April 2013 budget, and are presented without explanation in the June 2013 letter. This supports IHS's position that the proposed rate had not been presented in negotiations and that SCF failed to provide support for its proposal.

***Third,*** IHS has presented strong evidence for its determination that "the amount of funds proposed in the final offer exceeds the applicable funding level to which [SCF wa]s entitled under th[e ISDA]."[113] IHS's August 2013 letter clearly expressed its concern that SCF was seeking duplicate payments. As noted above, SCF's initial DVPI budget calculated "Total Direct Costs" of $397,871 and "Indirect Costs" of $84,682, totaling $482,554.[114] And yet the revised April 2013 DVPI budget included "Total Direct Costs" of $482,554 with a "-" for "Indirect Costs on Requested Funds."[115] IHS explains that "[a]lthough . . . SCF removed the 'indirect costs' lines in its DVPI budget, . . . the total dollar amount budgeted and awarded is the same, and SCF did not appear to revise its scope of work to reduce services."[116] SCF cites *Seneca Nation of Indians v. U.S.*

---

[113] *See* 25 U.S.C. § 458aaa-6(c)(1)(A)(i).

[114] Docket 56-15 at 21.

[115] Docket 17-12 at 1-2.

[116] Docket 47 at 33 (IHS Cross-Mot. and Opp'n).

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 30 of 33

*Department of Health & Human Services* for the proposition that "it is not SCF's burden to justify the validity of its position."[117]   But in *Seneca Nation*, IHS completely failed to respond to the tribe's proposed amendments.   In contrast, here, IHS provided its reasoning in the August 2013 letter.   The Court finds, in light of the record, that IHS's denial of SCF's final offer for DVPI indirect CSCs on the basis of concerns of duplicative CSC payment was justified.[118]

**Fourth,** SCF does not contest that it had included both indirect and direct CSCs in its budget requests for DVPI, as IHS never instructed SCF that it could not do so.[119]   SCF asserts that IHS has improperly categorized MSPI and DVPI as "full-cost recovery" programs, for which IHS may require that "any fixed overhead requirements must . . . come out of the amounts provided for program funding."[120]   But the appropriation language permitted IHS to require a tribe to use a certain portion of the base funds "not to exceed" certain dollar amounts for CSCs.[121]

---

[117]  Docket 44 at 44 (quoting *Seneca Nation of Indians v. U.S. DHHS*, 945 F.Supp.2d 135, 151 (D.D.C. 2013), *appeal dismissed*, 13-5219, 2013 WL 6818212 (D.C. Cir. 2013)).

[118]  The Court notes, however, that if the total budget was $397,871, exclusive of indirect CSCs, and if indirect CSCs were to be paid on that full amount, then $84,682 would be only about 17.5% (i.e., $482,554-$397,871 = $84,682, and $84,682 is only 17.5% of $397,871).  This appears to be lower than the typical off-site indirect CSC rate.  *See* Docket 6 at 12-13 ¶ 6 (8/21/13 Decl. of Lee Olson).  But other calculations may have been required.  The Court simply cannot make a determination, based upon the current records, as to whether that was an appropriate calculation.

[119]  Docket 28 ¶ 6 (9/20/13 Supp. Decl. of Lee Olson).  At the same time, SCF excluded "indirect administrative costs" from the MSPI budgets.  Docket 28 at 5 ¶ 14.

[120]  Docket 44 at 35 (Mot.).

[121]  Consol. Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. at 2135; Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. at 735; Dep't of the Interior,

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 31 of 33

For the foregoing reasons, IHS has provided clear and convincing reasons for its rejection of SCF's final offer concerning both the indirect and direct CSCs for DVPI.

## CONCLUSION

Under the ISDA, SCF is entitled to CSCs for MSPI and DVPI funds. IHS declined to adopt amendments to SCF's ISDA contract because the parties could not agree on contract amendment language concerning CSCs. In August 2013, IHS rejected SCF's June 2013 final offer, but has failed to provide clear and convincing evidence to support one component of its declination—the indirect contract support costs for the MSPI funding in the amount of $206,861. IHS should have offered SCF the opportunity to enter a severable portion of the agreement with respect to indirect CSCs for MSPI, but it did not do so. *See* 25 U.S.C. § 458aaa-6(c)(1)(D). Accordingly, the Court grants in part SCF's motion for summary judgment, and for the same reasons, the Court denies in part IHS's cross-motion for summary judgment. IHS shall provide a revised MSPI contract amendment to SCF that recognizes SCF's right to a minimum of $206,861 in additional funding for indirect CSCs associated with MSPI program funds.

In its August 2013 letter, IHS satisfied its burden with respect to the rejection of indirect and direct CSCs for DVPI and direct CSCs for MSPI. Accordingly, the Court denies in part SCF's motion for summary judgment and grants in part IHS's cross-motion

---

Appropriation, Pub. L. No. 111-88, 123 Stat. at 2945; Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. at 1027-28.

3:13-cv-00164-SLG, *Southcentral Foundation v. Roubideaux*
Order re Cross-Motions for Summary Judgment
Page 32 of 33

for summary judgment.  The parties are directed to further negotiate in an effort to reach a resolution on each of those topics.[122]

For the foregoing reasons, **IT IS ORDERED** as follows:

1. Plaintiff Southcentral Foundation's Motion for Summary Judgment at Docket 44 is **GRANTED in part and DENIED in part.**

2. Defendant Yvette Roubideaux, Director, U.S. Indian Health Service, Cross-Motion for Summary Judgment at Docket 48 is **GRANTED in part and DENIED in part.**

3. The parties shall promptly meet and confer and, within 30 days of the date of this Order, shall file, either separately or jointly, a status report regarding the proposed future proceedings necessary in this case.

DATED this 23rd day of September 2014

_/s/ Sharon L. Gleason_
United States District Judge

---

[122] _See_ 25 U.S.C. § 450m-1.

3:13-cv-00164-SLG, _Southcentral Foundation v. Roubideaux_
Order re Cross-Motions for Summary Judgment
Page 33 of 33